**FILED**

SEP 27 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN F. CAMPBELL, | ) | CASE NO. **1:21 CV 1830** |
| Plaintiff, | ) | |
| v. | ) | JUDGE **JUDGE GAUGHAN** |
| | ) | |
| EGIDIJUS MARCINKEVICIUS | ) | MAGISTRATE **MAG. JUDGE PARKER** |
| Defendant | ) | |

**COMPLAINT**

**(Jury Demand Endorsed Hereon)**

Now comes Plaintiff, Allen F. Campbell, pro se for his personal interests as they may appear, and for his Complaint filed herewith, invoking the diversity jurisdiction of the federal courts, in this action against Egidigus Marcinkevicius, Trustee, Defendant, for his ongoing mismanagement of trust assets, and to seek redress for said breach of trust, without prejudice to any other action of any kind; with respect, represents as follows:

**Parties**:

1.     Allen F. Campbell, Plaintiff, is and at all material times was a resident of the city of Fairhope, County of Baldwin, State of Alabama, and a beneficiary and Successor Trustee under the Last Will and Testament and the separate Trusts established by his mother, F. Margaret

1

Campbell; neither of the documents are attached hereto due to size and their availability to the parties.

2.      Egidijus Marcinkevecius, Defendant, is and at all material times was a resident of this District, an attorney licensed in the State of Ohio, maintaining an office at or with A. Servaitas & Associates, 880 East 185th Street, Cleveland, Ohio; and on or about November 1, 2017, the Probate Court of Cuyahoga County, pursuant to a conditional Joint Motion, presented without prejudice to any rights, claims or privileges under the Trusts or the Estate or any provision in either, appointed Egidijus Marcinkevecius as Successor Trustee of the F. Margaret Campbell 2011 Trust and the F Margaret Campbell Family Descendants Trust (hereinafter simply the "Margaret Trust").

**Jurisdiction:**

3.      There is complete diversity of citizenship between and amongst parties.

4.      The amount in controversy exceeds $75,000, as set forth in more detail below.

5.      Jurisdiction is therefore proper under the grant of diversity jurisdiction to the United States courts per 28 USC 1332.

**General Factual Background:**

6.      Margaret Campbell, at the time of her husband Donald's death in 2010, was the Executor of the Estate of Donald A. Campbell, principal beneficiary of the Estate of Donald A. Campbell, the principal beneficiary and Trustee of the Donald A. Campbell 2001 Trust and the Campbell Family 2001 Descendants Trust (hereinafter collectively and simply as "Donald Trust" or "Don's Trust"), pursuant to a Last Will and Testament, and also the Trustee of the F. Margaret Campbell 2011 Trust ("Margaret Trust") (no Will nor Trust documents are attached due to their

size and availability to the parties); at certain material times herein Margaret was in excess of 90 years of age, was hard of hearing, suffered from extremely diminished sight, and relied on others whom she trusted to explain things to her very clearly and carefully; Margaret was not mentally incompetent but was incapable of preparing or filling out any forms by herself; she relied on the counsel or assistance of others in carrying out her duties and responsibilities as Successor Trustee of the Donald Trust and General Partner in the Campbell Family Limited Partnership, and Margaret would not have knowingly undertaken any action in violation of her duties, responsibilities and her intentions.

7.      Donald and Margaret were the initial trustees of their respective inter vivos trusts (Donald or Don Trust and Margaret Trust) until their deaths. When Donald died in 2010, Margaret became the Successor Trustee of the Don Trust, which she administered until her death.

8.      At various times, Donald and Margaret, or later the Margaret Trust and the Donald Trust, were identified as equal general partners and equal limited partners of the Campbell Family Limited Partnership (the "CFLP"), a separate entity authorized and existing under the laws of the State of Ohio, in accordance with the CFLP Partnership Book found in Margaret's apartment. (The CFLP Partnership Book found in Margaret's Apartment is not attached hereto due to its size and availability to the parties).

9.      Assets were kept with Merrill Lynch Wealth Management and/or Merrill Lynch, Pierce, Fenner & Smith, Inc., (hereinafter collectively as "Merrill Lynch"), and managed by Merrill Lynch under various account agreements by or between Donald, Margaret, their respective Trusts, and/or the other entity known as the CFLP.

10.　　The assets held in Don's Trust at and after his death were identified and quantified in his Ohio Estate Tax Return.

11.　　Margaret was the sole trustee for her Trust and Donald Trust, and in those roles managed the CFLP as Trustee of the two trusts from 2010 until 2015.

12.　　However, many of the financial statements relating to the Margaret Trust, Don's Trust and the CFLP seemed to have been combined, and clear documentation and distinction between the entities was not easily discernable from records and documents in Margaret's possession.

13.　　The Merrill Lynch statements, in particular, made it difficult to understand the relationships between the entities – as it seemed that assets were moved around, liquidated, and/or held in different entities' accounts at different time periods.

14.　　In order to sort through the financial issues and determine the true and proper ownership and disposition of assets, Plaintiff hired forensic accountants to go through the Merrill Lynch statements and tax returns, and also engaged fiduciary counsel in Ohio, Mr. Peter Hessler, to assist.

15.　　Combinations, account changes and movement of assets at Merrill Lynch as mentioned herein were not undertaken at the specific direction of Margaret or of the Plaintiff, who held Margaret's Power of Attorney, and who was the only other person authorized to do so; rather, they were undertaken by Merrill Lynch acting on its own or at the instance or suggestion of others who were not authorized to do so.

16.     Preliminary findings of the forensic accountants and of Plaintiff's fiduciary counsel in Ohio, Peter Hessler, were made available to the Defendant and explained to him after his appointment as Successor Trustee.

### CFLP Ownership and Partnership Capital:

17.     The CFLP Partnership Book was found by Plaintiff in his mother's (Margaret's) apartment after she passed in 2015. (The CFLP Partnership Book is not attached due to size and availability to the parties.)

18.     The CFLP was formed as a separate entity on or about 04/09/1997 and operated under the laws of the State of Ohio (Limited Partnership Agreement ("LPA") of the CFLP); recorded as such with the Ohio State Secretary of State, with Certificate issued and dated 11/18/1997.

19.     At the outset of the CFLP in 1997, Donald and Margaret, as owners and beneficiaries, made a "Capital Contribution to the Partnership of all of [their] right, title and interest in and to" "Prime Plan IV and Prime Plan V" securities per Article 3.1 of the CFLP, at Tab 5 of the CFLP Book.

20.     Assets of the CFLP and of the trusts were kept with Merrill Lynch.

21.     The Prime Plan IV and V securities "contracts" were moved to Merrill Lynch account 612-07xxx, a CFLP Account.

22.     The Prime Plan securities remained as "marketable securities" with "cash value" in the CFLP accounts until the securities were liquidated in 2010 per a request of Merrill Lynch to

Margaret Campbell, as Trustee of the Donald Trust; money received from the sale of said securities was then transferred by Merrill Lynch to a sub-account of the Donald Trust.

23.     The 2010 FY CFLP Tax Return, at highlighted pages 15, 16, 17, 19 and 34-36 of the Return, confirms the aforesaid "transfer of capital" to the Donald Trust. (The CFLP tax returns are not attached due to their size and availability.)

24.     The Prime Plan securities--the asset or property made the subject of the distribution or "transfer of capital-- were at all material times Partnership Capital (hereinafter "Subject Partnership Capital").

25.     The Subject Partnership Capital was distributed or transferred to one partner only-the Donald Trust, resulting in a transfer so large it left the one partner receiving it with negative capital accounts; negative capital reflects the receipt of capital or assets in excess of that partner's interest in the Partnership; and in this case the transfer or distribution was so extensive that it did result in a negative capital account as determined by the CFLP; meaning a complete or "more-than-complete" withdrawal of the entire capital contribution and interest of the Donald Trust Partner in the CFLP.

26.     It was the CFLP's choice or determination, under Margaret's management of it, that the Donald Trust Partnership interests in the CFLP would continue but with a negative interest as reflected in all of the Don's Trust Partnership accounts.

27.     The negative interest as set forth above was determined initially by Margaret and her accountants from 2011 through 2014, subsequently by Plaintiff and the Defendant, and the CFLP duly and consistently reported the foregoing transaction involving the Prime Plan securities

6

as a negative charge against the capital account of Don's Trust in every one of the CFLP Federal Partnership Tax Returns.

28.     The CFLP required the Partnership to "maintain" for each Partner a separate Capital Account (defined in part as the account maintained for each partner pursuant to the CFLP Agreement—which includes his or her "Capital Contribution," which in turn is the money or fair market value of the securities contributed by the Partner to the Partnership), per Article 3.2(a) of the Limited Partnership Agreement of CFCP.

29.     No Partner could receive a return of his Capital Contribution pursuant to the Limited Partnership Agreement of CFCP, per Article 3.2(b) of the LPA of the CFLP.

30.     Any distributions by the CFLP "shall be distributed to the Partners in proportion to their Percentage Interests" pursuant to Article 3.3(a) of the Limited Partnership Agreement of CFCP.

31.     Any payment, distribution or transfer in these circumstances by or on behalf of the CFLP to Don's Trust alone was a violation of the CFLP Agreement and of partnership law.

32.     Any payment, distribution or transfer by or on behalf of the CFLP to Don's Trust alone violated the General and/or Managing Partner's duties and obligations, and if such transfer is not returned to the CFLP, this would also result in the receipt of a personal, non-partnership benefit by Don's Trust, withheld from the Partnership, in an ongoing violation of the CFLP Articles, the law of partnership, and the laws governing legal assignments.

33.     Don's Trust as a General and Limited Partner in the CFLP was without authority to take or keep solely for itself anything of value, particularly the specifically identified partnership

7

capital in the form of the Prime Plan securities, all of which had been assigned, pledged or otherwise hypothecated to the CFLP by Donald and Margaret.

34.     Under the Partnership agreement, freely entered into by Donald and Margaret, the Prime Plan securities were legally assigned to and owned by the CFLP, and those securities were not available to anyone else free of claim or debt.

35.     Request was made of the Donald Trust on March 6, 2017 to return or restore CFLP partnership capital, or at least the subject Partnership capital belonging to the interests of Partner Margaret Trust, which request was refused.

36.     Request was also made of the Defendant on November 30, 2017 to, amongst other things, preserve CFLP partnership capital, or at least the subject Margaret Trust Partnership Capital, and to dissolve the CFLP.

37.     All members of the Campbell Family once agreed upon the need to wind-up, dissolve and liquidate the CFLP.

38.     Winding up and dissolving the CFLP and its assets are governed under and in accordance with applicable U.S. Treasury guidelines, the liquidation provisions of the CFLP LP Agreement, supplemented as may be appropriate with Ohio R.C. § 1776.67; and in no circumstances is the negative capital interest of partners ignored.

39.     The Margaret Trust interests in the CFLP constitute a substantial portion of Margaret Trust property and assets, for which the Defendant is obligated to preserve and manage properly, and in good faith; but Defendant took no or no substantive action to preserve said property until March 18, 2020 when he filed a Complaint for Declaratory Judgment in the Court of Common Pleas, Probate Division, Cuyahoga County, Ohio; said matter was removed to the

United States District Court for the Northern District of Ohio, assigned Case No. 1:20-cv-00842

on the docket of this Court, and assigned top Judge James S. Gwin; but Defendant Marcinkevicius

thereafter moved to dismiss said action without prejudice pursuant to Rule 41(a)(1); a motion

granted on 04/24/2020. Copy of said Complaint for Declaratory Relief is attached as Complaint

Exhibit 1 (exhibits referenced therein not included due to their size and availability to the parties).

40.     The only other action taken by Defendant Marcinkevicius, allegedly to fulfill

fiduciary obligations, was his Trust Report Dated December 18, 2020. Copy of said Trust Report

is attached as Complaint Exhibit 2 (exhibits referenced therein not included due to their size and

availability to the Defendant).

41.     The Marcinkevicius Trust Report contains a notice on each page informing the

beneficiaries as follows:

"December 18, 2020
Please examine the report carefully and direct any questions
or concerns to the Successor Trustee, in writing. Under Ohio law, you have two years after
the Trustee's sending of this Report to commence any proceeding on it, or against the
Successor Trustee."

42.     Plaintiff directed questions and concerns in response to the Trust Report Notice on

January 2, 2021; however, as with prior requests by or on behalf of Plaintiff to Defendant, and

there have been about fourteen (14) of them, no meaningful response was ever received.

43.     This action against the Trustee is therefore premised on the Trustee Report which,

in pertinent part, is consistent with and reflects the indicative actions of the Trustee as set forth in

his Complaint for Declaratory Relief (Exhibit 1 hereto), even though said action was dismissed

but without prejudice to re-urge.

44.     Defendant in his Complaint for Declaratory Relief (Exhibit 1 hereto at P.110)

sought to have ownership interests in the CFLP declared in complete disregard of the CFLP's own

9

designation of the negative capital interest of Don's Trust, which is also contrary to the liquidation provisions of the CFLP LP agreement, and also contrary to applicable U.S. Treasury guidelines, supplemented as may be appropriate with Ohio R.C. § 1776.67.

45.     Defendant in his Trust Report Dated December 18, 2020 (Exhibit 2 hereto at page 3) declares that only "1/2 of the (Campbell Family Limited Partnership) assets...are attributable to the F. Margaret Campbell Trust(s);" again in complete disregard of the CFLP's own designation of the negative capital interest of Don's Trust, contrary to the liquidation provisions of the CFLP LP Agreement, also contrary to applicable U.S. Treasury guidelines, supplemented as may be appropriate with Ohio R.C. § 1776.67.

46.     Defendant in his Complaint for Declaratory Relief (Exhibit 1 hereto at P.28) also states his understanding that Don's Trust is entitled to a further "reduction in F. Margaret's Capital Account of the CFLP" of "not less than $181,430 of CFLP funds spent by Margaret for her own care;" said action is hostile to the Margaret Trust and is without basis or support in fact or in the law.

47.     Defendant in his Complaint for Declaratory Relief (Exhibit 1 hereto at P.116) further declares that neither the CFLP nor the Don's Trust interests are required to disgorge any income, presently believed to be approximately $165, 399, of income from the Don's Trust share of its income from CFLP ownership, which declaration is contrary to the prevailing practice of and when Margaret was Trustee of the Don's Trust, and in accordance with the provisions of the Don's Trust, which state that the Don's Trust Trustee *"shall distribute all of the net income ...*to Margaret, or for her benefit...during Margaret's lifetime."

48.     This positioning as set forth in the preceding paragraphs by Defendant as a fiduciary Trustee and General Partner are directly hostile to and against the interests of the Trust and of the

Plaintiff as his beneficiary; and any such position by Defendant had never before been communicated to Plaintiff before the service on him of his Complaint for Declaratory Judgment that was filed on March 18, 2020 (Exhibit 1), and later confirmed in the his Trust Report Dated December 18, 2020 (Exhibit 2)

**Claims.**

Count I: Fault, Neglect, Want of Due Care and Breach of Fiduciary Duty.

49.     Plaintiff incorporates all of the foregoing paragraphs as if fully re-written herein.

50.     Defendant undertook fiduciary obligations to the Margaret Trust and to the beneficiaries of the Margaret Trust, and in said capacities as a General and Limited Partner of the Campbell Family Limited Partnership.

51.     Plaintiff was and is a beneficiary of the Margaret Trust.

52.     Plaintiff was and is or will be a General and Limited Partner in the CFLP, either directly or derivatively.

53.     Defendant was required to exercise the reasonable care, skill and competence in his administration of the interests for whom and or for which he was engaged.

54.     Defendant breached fiduciary duties and ongoing obligations to the Plaintiff in the following respects, amongst others, which may be shown at a trial of this cause:

a. Failed to see that property or assets are properly designated as belonging to the trust;

b. Failed to keep clear, accurate and proper accounts of property belonging to the trust, and provide the accounting of same to the beneficiaries; and

c. Failed to take such steps as are reasonable to secure control of trust property and keep control of trust property; and

d. Failed to take possession and to preserve trust property; and

e. Failed to properly and effectively investigate and/or examine property or assets and determine what ought to belong to the trust, after being requested to do so on many occasions as set forth hereinabove;

f. Failed to take any or any reasonable steps to enforce, assert or defend claims; and

g. Failed to take any reasonable measures to inform or to respond to requests for disclosure of material facts or other information that might affect the beneficiaries' rights in the Trust or its property or assets;

h. Failed to respond to requests for plans or recommendation as to how to best protect the Margaret Trust assets from threatened destruction or waste;.

i. Failed to respond to communications;

j. Failed to provide a proper and accurate fiduciary accounting, after being requested to do so, also failing to provide specific fiduciary accounting information and associated documents that were specifically requested;

k. Failed to respond to request for information or other matters relating to the CFLP;

l. Failed to exercise that degree of reasonable care, skill and diligence owed to Plaintiff in the circumstanced of the case.

55.     Had Defendant not acted negligently or in breach of fiduciary obligations as set forth in the preceding paragraph, loss or damage to trust property; unnecessary costs, expenses and attorneys or other fees, could have been avoided or reasonably minimized.

Count II: Disloyalty.

56.     Plaintiff incorporates all of the foregoing paragraphs as if fully re-written herein.

57.     Defendant breached his ongoing obligation of loyalty to Plaintiff in the following respects, amongst others, which may be shown at a trial of this case:

a. By failing to disclose material facts known to Defendant that might affect the beneficiaries rights; and

b. By aligning himself with interests and strangers to the trust, and in open conflict with the Plaintiff as his beneficiary in the trust, which violates public policy and the rights of the plaintiff; and

c. By assuming a position that would subject Defendant to conflicting actions or duties contrary to the interests of the beneficiary is a conflict of interest with the Plaintiff, and a violation of public policy, and the rights of the Plaintiff; and

d. By assuming a position that would subject Defendant to conflicting actions or duties contrary to the Margaret Trust partnership interest is a conflict of interest with the Plaintiff, and a violation of public policy, and the rights of the Plaintiff; and

d. By entering into any relation or in doing any act inconsistent with the interests of the beneficiary in trust property is a conflict of interest with the Plaintiff, and a violation of public policy and the rights of the Plaintiff; and

e. By undertaking actions or associations in conflict of interest with the Plaintiff, Defendant engaged in a form of self-dealing, a violation of public policy, and the rights of the Plaintiff.

58.     Had Defendant not acted in violation of his duty of loyalty, as set forth in the preceding paragraphs, loss or damage to trust property; unnecessary costs, expenses and attorneys or other fees, could have been avoided or reasonably minimized.

Count III: Lack of Good Faith.

59.     Plaintiff incorporates all of the foregoing paragraphs as if fully re-written herein.

60.     Defendant, on or about March 18, 2020, as Successor Trustee, and in said capacities as General and Limited Partner of the CFLP, and the General and Limited partner of the CFLP, caused to be filed in the Probate Court a Complaint for Declaratory Judgment, Attorneys Fees, Costs and Other Equitable Relief, together with Exhibits attached (previously identified as Complaint Exhibit 1 hereto).

61.     Defendant is obliged to perform his services at all times in good faith; however, Defendant did not always act in good faith but instead acted in bad faith, maliciously or in collusion with interests adverse to the Plaintiff as a beneficiary in the Margaret Trust, in the following respects, amongst others, which may be shown at a trial of this case:

Defendant alleged, amongst other things, in his Complaint for Declaratory Relief (Exhibit 1) that:

(1)     **"By reason of the now amply displayed litigious nature of Allen Campbell, plaintiff believes it is critical** for the Court to decide the matters set forth in this action for declaratory judgment and other equitable relief, **to end the repeated attempts by Allen Campbell to assert claims which are without any basis in fact, or law;"** P. 39 a. (6), page 13; but this contention is false, has no evidentiary support and is not

14

warranted by the evidence; Plaintiff was represented by outside counsel in all the litigation mentioned, and all such counsel are expected to testify against the Defendant Marcinkevicius' meritless contention of asserting claims with no basis in fact or law, and

**(2)** "Allen Campbell **took funds** from the F. Margaret Campbell 2011 Trust, in excess of $135,000.00, to pay **for his pursuit of litigation**," P.42, at page 15; but this contention is false, known to be false, has no evidentiary support, and is not warranted by the evidence; and

**(3)** [Defendant states that] **"Allen Campbell has not proved, and cannot prove, any set of facts and/or theory which would in any way be supported by the actual documents actually executed by Donald A. Campbell and F. Margaret Campbell;"** P.45(a), at page 16, but this this contention is meritless, has no relevant evidentiary support and cannot be supported by existing law or nonfrivolous argument; however, if even remotely nonfrivolous, it ought to be supported by material information affecting the beneficiaries' rights, which information must be conveyed to the plaintiff as a beneficiary, but was not; and

**(4)** [Defendant states that ] "All funds spent and/or taken by Allen Campbell in pursuit of his [claims] should be disallowed and either be repaid by Allen Campbell to the F. Margaret 2011 Trust, or be deducted from any legacy which would otherwise be payable to Allen Campbell," P. P45(b), at page 16; but this legal contention is also meritless; however, if even remotely nonfrivolous, it ought to be supported by material information affecting the beneficiaries' rights, which must be conveyed to the beneficiary, but was not; and

**(5)** "[Allen Campbell] **seeks to enrich himself at the expense of every other [Margaret Trust] beneficiary**," interest, at page 76; but this contention is false, known to be false, has no evidentiary support and is not warranted by the evidence; and

**(6)** "Allen Campbell **has created family disputes, with no basis in fact or law;**

15

(7)  Allen Campbell has created family disharmony, with no basis in fact, or law; and

(8)  Allen Campbell **has created, and continues to create, litigation and problems which have no basis in fact, or law;"** all above three statements are also from P. 273, at page 76; but all of these contentions are false, have no evidentiary support and are not warranted by the evidence; and

(9)  [Defendant states that] **"The [Margaret Trust] could not have benefitted, and cannot now benefit from Allen Campbell's** pursuits…,"** at page 95; but this contention is false, has no evidentiary support, is not warranted by the evidence, and cannot be supported by a good faith legal basis; and

(10)  [Defendant states that] **"Regarding the (allegedly) frivolous conduct of Allen Campbell,…**Defendant requests that Allen Campbell be declared to pay for all of the costs, expenses, expert's fees, and fiduciary fees and attorneys' fees caused by Allen Campbell's conduct [which]: obviously **serves or served merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including,** but not limited to

- causing **unnecessary delay or a needless increase in the cost of litigation;** and/or:
- **is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law;** and/or,
- **Is conduct consisting of allegations or other factual contentions that have no evidentiary support** or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and/or,
- Is conduct that consists of denials or **factual contentions that are not warranted by the**

16

**evidence** or, if specifically so identified, are not reasonably based on a lack of information or belief;" all of the above forgoing statements found at pages 96-97; and all of them are either false, have no evidentiary support, are not warranted by the evidence, or cannot be supported by any good faith legal basis; however, if even remotely nonfrivolous, these claims ought to be supported by material information affecting the beneficiaries' rights, which information must be conveyed by the fiduciary to the Plaintiff as a beneficiary, but was not;

**(11).** Defendant mischaracterizes the Plaintiff's claims and requests. Plaintiff never asserted that the Single Payment Variable Life polices needed to have been "cashed-out" before Don's death. See Complaint for Declaratory Relief (Exhibit 1 at P. 19-22, at pages 6-7, also P256). The gravamen of the Plaintiff's request never involved the separate death benefit feature of the Variable Life Policies. Rather, the Plaintiff's request was and still is to give effect to Margaret's and to the CFLP's proper choice on how to allocate the distribution or transfer of the Subject Partnership Capital, which capital consisted of the marketable securities that had been legally assigned to the CFLP by Margaret and Donald. It is the Defendant who distorts the Plaintiff's claims and requests, and ignore the decisions and transactions of the CFLP, and now seeks to change them by declaring that the CFLP had "no duty to increase or decrease Capital account percentages." See CFLP Complaint for Declaratory Relief (Exhibit 1 at P.260, page 71). Even if true, which is denied, whether the CFLP and Margaret had duty or not is beside the point. That is what Margaret and the CFLP did, and no effort has been made by Defendant to demonstrate that their determination was improper or invalid; and it is not the Defendant's duty or obligation to challenge or change good faith and proper allocations to the detriment of the Margaret Trust and its beneficiaries.

17

62.     In addition, Defendant further announced in his Complaint for Declaratory Relief (Exhibit 1, P 278, at page 79) his intention to distribute any sums received from his frivolous claim allegations with the "several parties hereto," namely all other Campbell family members, whether as beneficiaries in the Margaret Trust or not.

63.     Defendant's allegations regarding "frivolous conduct" and vexatious litigation are themselves frivolous in that Defendant mischaracterizes the Plaintiff's claims and does so in the midst of a vituperative attack on the Plaintiff personally.

64.     Taken together, from all the forgoing paragraphs, Defendant acted, in whole or in part, out of malice or in collusion with others, or with ulterior motives separate and apart from the good faith obligations of a fiduciary, or simply to enrich himself and others at the expense of the Plaintiff, or to take advantage of his position with respect to the Margaret Trust to the disadvantage of a trust beneficiary.

65.     The facts and circumstances, taken together from all the forgoing paragraphs, demonstrate that the Defendant failed to take any action to mitigate substantial injury to the financial interests of the beneficiaries in the Margaret Trust or to the Plaintiff.

66.     The facts and circumstances from all the foregoing paragraphs, either in whole or in part, were not the result of mistake, stupidity, or failure to exercise ordinary care in the circumstances, but were caused by gross neglect or willfully or with malice or in conscious disregard for the Plaintiff's rights.

67.     From all the forgoing, Plaintiff has suffered loss, damages and harm as a result, in excess of $75,000, although the extent of the harm and the losses as set forth hereinabove are ongoing and continue to grow.

Count IV. Declaratory and/or Injunctive Relief.

68.     Plaintiff requests an order declaring that Defendant cannot seek or obtain or participate in any distribution, declaration or decision relating to CFLP Capital other than as set forth in the designation of the respective capital interests by the CFLP and Margaret Campbell in the CFLP tax returns from 2010 through 2015, and by the CFLP from 2016-2017.

69.     Plaintiff further requests an order declaring that Defendant cannot seek or obtain or participate in any winding-up or dissolution of the CFLP in disregard of any of the following:

- The CFLP LP Agreement Article 9.2 which sets forth how proceeds are to be applied at liquidation, and in pertinent part here 9.2(iv)- "To the Partners in accordance with their positive account balances…,";
- applicable U.S. Treasury guidelines on winding-up and dissolving partnerships;
- supplemented as may be appropriate with Ohio R.C. § 1776.67; and
- in no circumstances is the negative capital interest of the partner's capital accounts as designated by the CFLP to be arbitrarily changed.

70.     Plaintiff further requests an order appointing a Receiver under Rule 66, Fed. R. Civ. P., and /or supplemented by Ohio law, to undertake the winding-up and dissolution of the CFLP in accordance with the terms of the CFLP LP Agreement, applicable U.S. Treasury guidelines, supplemented as appropriate with  Ohio R.C. § 1776.67.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Judgment in the Plaintiff's favor, for all of the loss, damage and harm set forth hereinabove, in an exact amount to be shown at the trial of this cause, and for all costs of this action and its reasonable attorney fees, as the Court shall determine to be fair and equitable under the circumstances; and for such other relief as the Court shall find fair and equitable.

Plaintiff also prays for an Order of this Court declaring that Defendant cannot seek or obtain or participate in any winding-up or dissolution of the CFLP in disregard of any of the terms of the CFLP LP Agreement on liquidation and the applicable U.S. Treasury guidelines, supplemented as appropriate with  Ohio R.C. § 1776.67.

Plaintiff further prays for  an Order appointing a Receiver to undertake the winding-up and dissolution of the CFLP in accordance with the terms of the CFLP LP Agreement, applicable U.S. Treasury guidelines, supplemented as appropriate with  Ohio R.C. § 1776.67.

## JURY DEMAND

Plaintiff hereby demands a jury of the maximum number permitted by law.

Respectfully submitted,

_____*Allen J. Campbell*_____

ALLEN F. CAMPBELL
Pro Se.
322 CUMBERLAND ROAD
FAIRHOPE, AL  36532
allencampbell@live.com